**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**

ADAM LEHMANN, individually and on behalf of all others similarly situated,

Plaintiff,

v.

CFD INVESTMENTS, INC.,

Defendant.

Case No.

CLASS ACTION

JURY TRIAL DEMANDED

## CLASS ACTION COMPLAINT

Plaintiff Adam Lehmann ("Plaintiff"), individually, and on behalf of all others similarly situated (collectively, "Class members"), by and through his attorneys, bring this Class Action Complaint against Defendant CFD Investments, Inc. ("CFD" or "Defendant"), and complains and alleges upon personal knowledge as to himself and information and belief as to all other matters.

## INTRODUCTION

1. Plaintiff brings this class action against Defendant for its failure to secure and safeguard Plaintiff's and approximately 31,731 others' personally identifying information ("PII"), including names, Social Security numbers, driver's license numbers, and financial account information.

2. CFD is an independent registered broker/dealer and financial services company.

3. Between approximately March 15, 2025 and May 9, 2025, an unauthorized third party gained access to CFD's network systems via an employee's compromised email account and acquired files containing the PII of CFD's customers, including Plaintiff and Class members (the "Data Breach").

4. Defendant owed a duty to Plaintiff and Class members to implement and maintain reasonable and adequate security measures to secure, protect, and safeguard their PII against unauthorized access and disclosure. Defendant breached that duty by, among other things, failing to implement and maintain reasonable security procedures and practices to protect Plaintiff's and Class members' PII from unauthorized access and disclosure.

5. As a result of Defendant's inadequate security and breach of its duties and obligations, the Data Breach occurred, and Plaintiff's and Class members' PII was accessed and disclosed. This action seeks to remedy these failings and their consequences. Plaintiff brings this action on behalf of himself and all persons whose PII was exposed as a result of the Data Breach.

6. Plaintiff, on behalf of himself and all other Class members, asserts claims for negligence, negligence per se, breach of fiduciary duty, breach of implied contract, and unjust enrichment, and seeks declaratory relief, injunctive relief, monetary damages, statutory damages, punitive damages, equitable relief, and all other relief authorized by law.

## PARTIES

***Plaintiff Adam Lehmann***

7. Plaintiff is a citizen and resident of Indiana.

8. As a condition of receiving financial or related services, CFD required Plaintiff to provide it with his PII, including the PII accessed and stolen by cybercriminals in the Data Breach.

9. At all relevant times, CFD stored and maintained Plaintiff's PII on its network systems, including those systems affected in the Data Breach. Plaintiff's PII was accessed and stolen from CFD's network systems in the Data Breach by cybercriminals who intended to misuse that PII.

10. Plaintiff received a letter from CFD dated January 28, 2026, notifying him that his PII was in the files accessed and acquired by an unauthorized third party in the Data Breach.

11. As a direct result of the Data Breach, Plaintiff has become a victim of fraud. Beginning after the Data Breach, Plaintiff has experienced fraudulent charges on his debit and credit cards on several occasions. As a result, Plaintiff has had to spend time and effort addressing the fraudulent charges and replacing his credit and debit card multiple times since the Data Breach.

12. Since the Data Breach, Plaintiff has experienced a large increase in the number of spam calls, texts, and emails he receives.

13. As a result of the compromise of his PII in the Data Breach and the resulting fraud, Plaintiff has spent significant time and energy attempting to mitigate the harm he has already experienced and to prevent further harm from occurring, including time spent researching the Data Breach, researching appropriate steps to remedy fraud and protect his finances, and dealing with fraud and increased spam.

14. As a direct result of the Data Breach, Plaintiff has suffered additional injury and damages including, *inter alia*, a substantial and imminent risk of identity theft; the wrongful disclosure and loss of confidentiality of his highly sensitive PII; time and effort lost attempting to mitigate the harm caused by the Data Breach; and deprivation of the value of his PII.

***Defendant CFD Investments, Inc.***

15. Defendant CFD Investments, Inc. is an Indiana corporation with its principal place of business located at 2704 South Goyer Road, Kokomo, IN 46902. It can be served through its registered agent: Brent Owens, 2704 South Goyer Road, Kokomo, IN 46902.

## JURISDICTION AND VENUE

16. The Court has subject matter jurisdiction over Plaintiff's claims under 28 U.S.C. § 1332(d)(2), because (a) there are 100 or more Class members, (b) at least one Class member is a citizen of a state that is diverse from Defendant's citizenship, and (c) the matter in controversy exceeds $5,000,000, exclusive of interest and costs.

17. This Court has general personal jurisdiction over Defendant because it is organized under the laws of this State and maintains its principal place of business in this State.

18. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendant's principal place of business is in this District and a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this District.

## FACTUAL ALLEGATIONS

### *Overview of Defendant*

19. CFD is an "independent Registered Broker/Dealer" that offers "products, services, tools, financial[] planning and money management platforms" to financial advisors and individuals.[1]

20. In the regular course of its business, CFD collects and maintains the PII of its customers, including Plaintiff and Class members. CFD requires customers to provide it with their PII, including the PII stolen in the Data Breach, to obtain services from CFD.

21. CFD's website contains a Privacy Policy that states "In the course of doing business with *cfd* Investments, Inc. . . . you share personal and financial information with us. We treat this information as confidential and recognize the importance of protecting access to it."[2]

---

[1] *About Us*, CFD INV., https://cfdinvestments.com/about-us/ (last accessed Mar. 4, 2026).

[2] Disclosures & Policies – Privacy Policy, CFD INV., https://cfdinvestments.com/disclosures/ (last accessed Mar. 4, 2026) [hereinafter, the "Privacy Policy"].

22. CFD further promises it "do[es] not disclose this information to third parties unless it is necessary to process a transaction or service an account."[3]

23. CFD promises its customers that it maintains "physical, electronic and procedural safeguards to protect information about our clients."[4] It also promises customers that it restricts access to PII and "require[s] that it be held in strict confidence."[5]

24. Plaintiff and Class members are individuals whose PII was entrusted to CFD in exchange for receiving financial services from CFD.

***The Data Breach***

25. Between approximately March 15, 2025 and May 9, 2025—nearly eight weeks—an unauthorized third party gained access to a CFD employee's email account and accessed and acquired files containing the PII of CFD's customers, including at least their names, Social Security numbers, driver's license numbers, and financial account information.[6]

26. Despite the fact that the Data Breach occurred between March 15, 2025 and May 9, 2025, CFD did not begin notifying Plaintiff and Class members that the Data Breach occurred and that their PII was accessed and acquired by unauthorized persons until approximately January 28, 2026, over eight months after the Data Breach.[7]

27. Defendant's failure to promptly notify Plaintiff and Class members that their PII was disclosed, accessed, and stolen virtually ensured that the unauthorized third parties who exploited those security lapses could monetize, misuse, or disseminate that PII before Plaintiff and

---

[3] *Id.*
[4] *Id.*
[5] *Id.*
[6] *CFD Investments, Inc. Data Breach Notification*, ME. ATT'Y GEN. OFF. (Jan. 28, 2026), https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/15da4f24-a7f5-4122-8733-4296b3e53727.html
[7] *Id.*

Class members could take affirmative steps to protect their sensitive information. As a result, Plaintiff and Class members will suffer indefinitely from the substantial and concrete risk that their identities will be (or already have been) stolen and misappropriated.

***Defendant Knew that Criminals Target PII***

28. At all relevant times, Defendant knew, or should have known, that the PII that it collected and stored was a target for malicious actors. Despite such knowledge, Defendant failed to implement and maintain reasonable and appropriate data privacy and security measures to protect Plaintiff's and Class members' PII from unauthorized disclosures and cyberattacks that it should have anticipated and guarded against.

29. It is well known among companies that store sensitive personally identifying information that such information—such as the PII stolen in the Data Breach—is valuable and frequently targeted by criminals. In a recent article, *Business Insider* noted that "[d]ata breaches are on the rise for all kinds of businesses, including retailers . . . . Many of them were caused by flaws in . . . systems either online or in stores."[8]

30. PII is a valuable property right.[9] The value of PII as a commodity is measurable.[10] "Firms are now able to attain significant market valuations by employing business models predicated on the successful use of personal data within the existing legal and regulatory

[8] Dennis Green, Mary Hanbury & Aine Cain, *If you bought anything from these 19 companies recently, your data may have been stolen*, BUS. INSIDER (Nov. 19, 2019, 8:05 AM), https://www.businessinsider.com/data-breaches-retailers-consumer-companies-2019-1.
[9] *See* Marc van Lieshout, *The Value of Personal Data*, 457 Int'l Fed'n for Info. Processing 26 (May 2015) ("The value of [personal] information is well understood by marketers who try to collect as much data about personal conducts and preferences as possible . . ."), https://www.researchgate.net/publication/283668023_The_Value_of_Personal_Data.
[10] *See* Robert Lowes, *Stolen EHR [Electronic Health Record] Charts Sell for $50 Each on Black Market*, MEDSCAPE (April 28, 2014), http://www.medscape.com/viewarticle/824192.

frameworks."[11] American companies are estimated to have spent over $19 billion on acquiring personal data of consumers in 2018.[12] It is so valuable to identity thieves that once PII has been disclosed, criminals often trade it on the "cyber black-market," or the "dark web," for many years.

31. Criminals piece together bits and pieces of compromised PII for profit by creating "Fullz" packages. "Fullz" is fraudster speak for data that includes the information of the victim, including, but not limited to, the name, address, credit card information, social security number, date of birth, and more.

32. With "Fullz" packages, cyber-criminals can cross-reference two sources of PII to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals.

33. The development of "Fullz" packages means that the stolen PII from the Data Breach can easily be used to link and identify it to Plaintiff's and Class members' phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the PII that was exfiltrated in the Data Breach, criminals may still easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over.

---

[11] Organization for Economic Co-operation and Development, *Exploring the Economics of Personal Data: A Survey of Methodologies for Measuring Monetary Value*, OECD iLIBRARY (Apr. 2, 2013), https://www.oecd-ilibrary.org/science-and-technology/exploring-the-economics-of-personal-data_5k486qtxldmq-en.

[12] IAB Data Center of Excellence, *U.S. Firms to Spend Nearly $19.2 Billion on Third-Party Audience Data and Data-Use Solutions in 2018, Up 17.5% from 2017*, INTERACTIVE ADVERT. BUREAU (Dec. 5, 2018), https://www.iab.com/news/2018-state-of-data-report/.

34. Thus, even if certain information (such as contact information) was not stolen in a data breach, criminals can still easily create a comprehensive "Fullz" package. Then, this comprehensive dossier can be sold—and then resold in perpetuity—to criminals.

35. Consumers place a high value on the privacy of their data, as they should. Researchers shed light on how much consumers value their data privacy—and the amount is considerable. Indeed, studies confirm that "when privacy information is made more salient and accessible, some consumers are willing to pay a premium to purchase from privacy protective websites."[13]

36. Given these facts, any company that transacts business with a consumer and then compromises the privacy of consumers' PII has thus deprived that consumer of the full monetary value of the consumer's transaction with the company.

***Theft of PII Has Grave and Lasting Consequences for Victims***

37. Theft of PII can have serious consequences for the victim. The FTC warns consumers that identity thieves use PII to receive medical treatment, start new utility accounts, and incur charges and credit in a person's name.[14] [15]

---

[13] Janice Y. Tsai et al., *The Effect of Online Privacy Information on Purchasing Behavior*, *An Experimental Study*, 22(2) INFO. SYS. RSCH. 254 (June 2011) https://www.jstor.org/stable/23015560?seq=1.

[14] *See* Federal Trade Commission, *What to Know About Identity Theft*, FTC CONSUMER INFO., https://www.consumer.ftc.gov/articles/what-know-about-identity-theft (last accessed Mar. 4, 2026).

[15] The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." 12 C.F.R. § 1022.3(h). The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, social security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number." 12 C.F.R. § 1022.3(g).

38. Experian, one of the largest credit reporting companies in the world, warns consumers that "[i]dentity thieves can profit off your personal information" by, among other things, selling the information, taking over accounts, using accounts without permission, applying for new accounts, obtaining medical procedures, filing a tax return, and applying for government benefits.[16]

39. Identity theft is not an easy problem to solve. In a 2025 survey, the Identity Theft Resource Center found that 20% of victims of identity misuse needed more than 30 days to resolve issues stemming from identity theft and 13% required three months or more.[17]

40. There may also be time lags between when sensitive personal information is stolen, when it is used, and when a person discovers it has been used. On average it takes approximately three months for consumers to discover their identity has been stolen and used, but it takes some individuals up to three years to learn that information.[18]

41. It is within this context that Plaintiff and all other Class members must now live with the knowledge that their PII is forever in cyberspace and was taken by someone intending to use that information for any number of improper purposes and scams, including making the information available for sale on the black-market.

---

[16] *See* Louis DeNicola, *What Can Identity Thieves Do with Your Personal Information and How Can You Protect Yourself*, EXPERIAN (May 21, 2023), https://www.experian.com/blogs/ask-experian/what-can-identity-thieves-do-with-your-personal-information-and-how-can-you-protect-yourself/.

[17] Identity Theft Resource Center, *2025 Consumer Impact Report*, IDENTITY THEFT RES. CTR. (2025), https://www.idtheftcenter.org/publication/itrc-2025-consumer-impact-report/ (last accessed Mar. 4, 2026).

[18] John W. Coffey, *Difficulties in Determining Data Breach Impacts*, 17 J. OF SYSTEMICS, CYBERNETICS AND INFORMATICS 9 (2019), http://www.iiisci.org/journal/pdv/sci/pdfs/IP069LL19.pdf.

***Damages Sustained by Plaintiff and Class Members***

42. Plaintiff and Class members have suffered and will suffer injury, including, but not limited to: (i) a substantially increased and imminent risk of identity theft; (ii) the disclosure, compromise, and theft of their PII; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from unauthorized use of their PII; (iv) lost opportunity costs associated with efforts attempting to mitigate the actual and future consequences of the Data Breach; (v) the continued risk to their PII which remains in Defendant's possession; and (vi) future costs in terms of time, effort, and money that will be required to prevent, detect, and repair the impact of the PII compromised as a result of the Data Breach.

## CLASS ALLEGATIONS

43. This action is brought and may be properly maintained as a class action pursuant to Fed. R. Civ. P. 23.

44. Plaintiff brings this action on behalf of himself and all members of the following Class of similarly situated persons:

> All persons whose personally identifiable information was accessed in the Data Breach by unauthorized persons, including all persons who were sent a notice of the Data Breach.

45. Excluded from the Class are CFD Investments, Inc. and its affiliates, parents, subsidiaries, officers, agents, and directors; as well as the judge(s) presiding over this matter and the clerks of said judge.

46. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

47. The members of the Class are so numerous that joinder of each of the Class members in a single proceeding would be impracticable. CFD reported to the Indiana Attorney General that the Data Breach affected 31,731 individuals.[19]

48. Common questions of law and fact exist as to all Class members and predominate over any potential questions affecting only individual Class members. Such common questions of law or fact include, *inter alia*:

a. Whether Defendant had a duty to implement and maintain reasonable security procedures and practices to protect and secure Plaintiff's and Class members' PII from unauthorized access and disclosure;

b. Whether Defendant had a duty not to disclose the PII of Plaintiff and Class members to unauthorized third parties;

c. Whether Defendant failed to exercise reasonable care to secure and safeguard Plaintiff's and Class members' PII;

d. Whether Defendant breached those duties to protect Plaintiff's and Class members' PII; and

e. Whether Plaintiff and Class members are entitled to damages and the measure of such damages and relief.

49. Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff, on behalf of himself and all other Class members. Individual questions, if any, pale in comparison, in both quantity and quality, to the numerous common questions that dominate this action.

50. Plaintiff's claims are typical of the claims of the Class. Plaintiff, like all proposed members of the Class, had his PII compromised in the Data Breach. Plaintiff and Class members were injured by the same wrongful acts, practices, and omissions committed by Defendant, as

---

[19] *Data Breach Report 2026*, IND. ATT'Y GEN. OFF., https://www.in.gov/attorneygeneral/consumer-protection-division/id-theft-prevention/files/DB-YeartoDate-Report-3_2026.pdf (last accessed Mar. 4, 2026).

described herein. Plaintiff's claims therefore arise from the same practices or course of conduct that give rise to the claims of all Class members.

51. Plaintiff will fairly and adequately protect the interests of the Class members. Plaintiff are an adequate representative of the Class in that he has no interests adverse to, or that conflict with, the Class he seeks to represent. Plaintiff has retained counsel with substantial experience and success in the prosecution of complex consumer protection class actions of this nature.

52. A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages and other financial detriment suffered by Plaintiff and Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for Class members to individually seek redress from Defendant's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION

### COUNT I
### NEGLIGENCE

53. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

54. Defendant owed a duty to Plaintiff and all other Class members to exercise reasonable care in safeguarding and protecting their PII in its possession, custody, or control.

55. Defendant knew, or should have known, the risks of collecting, sharing, and storing Plaintiff's and Class members' PII, and the importance of maintaining secure systems. Defendant knew, or should have known, of the many data breaches that targeted organizations storing PII in recent years.

56. Given the nature of Defendant's businesses, the sensitivity and value of the PII it collects, shares, and maintains, and the resources at its disposal, Defendant should have identified the vulnerabilities in its systems and prevented the Data Breach from occurring.

57. Defendant breached these duties by failing to exercise reasonable care in safeguarding and protecting Plaintiff's and Class members' PII by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems to safeguard and protect PII entrusted to it—including Plaintiff's and Class members' PII.

58. It was, or should have been, reasonably foreseeable to Defendant that its failure to exercise reasonable care in safeguarding and protecting Plaintiff's and Class members' PII by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems would result in the unauthorized release, disclosure, and dissemination of Plaintiff's and Class members' PII to unauthorized individuals.

59. Additionally, Defendant had an obligation to provide prompt and accurate notice of the Data Breach to Plaintiff and Class members. Defendant knew that the PII accessed by cybercriminals in the Data Breach was highly sensitive and can be used to commit

identity theft and fraud using Plaintiff's and Class members' PII, which would cause substantial harm to Plaintiff and Class members.

60. But for Defendant's negligent conduct or breach of the above-described duties owed to Plaintiff and Class members, their PII would not have been compromised.

61. As a result of Defendant's above-described wrongful actions, inaction, and want of ordinary care that directly and proximately caused the Data Breach, Plaintiff and all other Class members have suffered, and will continue to suffer, economic damages and other injury and actual harm in the form of, *inter alia*: (i) a substantial increase in the likelihood of, or imminent threat of, identity theft; (ii) the compromise, publication, and theft of their PII; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from unauthorized use of their PII; (iv) lost opportunity costs associated with efforts attempting to mitigate the actual and future consequences of the Data Breach; (v) the continued risk to their PII which remains in Defendant's possession; and (vi) future costs in terms of time, effort, and money that will be required to prevent, detect, and repair the impact of the PII compromised as a result of the Data Breach.

**COUNT II**
**NEGLIGENCE PER SE**

62. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

63. Defendant's duties also arise from Section 5 of the FTC Act ("FTCA"), 15 U.S.C. § 45(a)(1), which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to employ reasonable measures to protect and secure PII.

64. Defendant violated Section 5 of the FTCA by failing to use reasonable measures to protect Plaintiff's and all other Class members' PII, not providing notice to Plaintiff and Class members within 60 days of the Data Breach, and not complying with applicable industry standards. Defendant's conduct was particularly unreasonable given the nature and amount of PII it obtains and stores, and the foreseeable consequences of a data breach involving PII including, specifically, the substantial damage that would result to Plaintiff and the other Class members.

65. Defendant's violations of Section 5 of the FTCA constitute negligence per se.

66. Plaintiff and Class members are within the class of persons that Section 5 of the FTCA was intended to protect.

67. The harm occurring as a result of the Data Breach is the type of harm Section 5 of the FTCA was intended to guard against. The FTC has pursued enforcement actions against businesses such as Defendant, which, as a result of their failure to employ reasonable data security measures and avoid unfair practices or deceptive practices, caused the same type of harm that has been suffered by Plaintiff and Class members as a result of the Data Breach.

68. It was reasonably foreseeable to Defendant that its failure to exercise reasonable care in safeguarding and protecting Plaintiff's and Class members' PII by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems, would result in the release, disclosure, and dissemination of Plaintiff's and Class members' PII to unauthorized individuals.

69. The injury and harm that Plaintiff and the other Class members suffered was the direct and proximate result of Defendant's violations of Section 5 of the FTCA. As a result

of Defendant's above-described wrongful actions, inaction, and want of ordinary care that directly and proximately caused the Data Breach, Plaintiff and all other Class members have suffered, and will continue to suffer, economic damages and other injury and actual harm in the form of, *inter alia*: (i) a substantial increase in the likelihood of, or imminent threat of, identity theft; (ii) the compromise, publication, and theft of their PII; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from unauthorized use of their PII; (iv) lost opportunity costs associated with efforts attempting to mitigate the actual and future consequences of the Data Breach; (v) the continued risk to their PII which remains in Defendant's possession; and (vi) future costs in terms of time, effort, and money that will be required to prevent, detect, and repair the impact of the PII compromised as a result of the Data Breach.

## COUNT III
## BREACH OF FIDUCIARY DUTY

70. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

71. As a condition of obtaining services from CFD, Plaintiff and Class members gave CFD their PII in confidence, believing that CFD would protect that information. Plaintiff and Class members would not have provided CFD with this information had they known it would not be adequately protected. CFD's acceptance, use, and storage of Plaintiff's and Class members' PII created a fiduciary relationship between CFD and Plaintiff and Class members. In light of this relationship, CFD must act primarily for the benefit of its customers, which includes safeguarding and protecting Plaintiff's and Class members' PII.

72. CFD has a fiduciary duty to act for the benefit of Plaintiff and Class members upon matters within the scope of their relationship. It breached that duty by, among other

things, failing to properly protect the integrity of the system containing Plaintiff's and Class members' PII, and otherwise failing to safeguard Plaintiff's and Class members' PII that it collected, utilized, and maintained.

73. As a direct and proximate result of Defendant's breach of its fiduciary duties, Plaintiff and Class members have suffered and will suffer injury, including, but not limited to: (i) a substantially increased and imminent risk of identity theft; (ii) the compromise, publication, and theft of their PII; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from unauthorized use of their PII; (iv) lost opportunity costs associated with efforts attempting to mitigate the actual and future consequences of the Data Breach; (v) the continued risk to their PII which remains in Defendant's possession; (vi) future costs in terms of time, effort, and money that will be required to prevent, detect, and repair the impact of the PII compromised as a result of the Data Breach; and (vii) overpayment for the services that were received without adequate data security.

## COUNT IV
## BREACH OF IMPLIED CONTRACT

74. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

75. In connection with receiving financial services, Plaintiff and all other Class members entered into implied contracts with CFD.

76. Pursuant to these implied contracts, Plaintiff and Class members paid money to CFD (directly or through their financial advisor) and provided CFD with their PII. In exchange, CFD agreed to, among other things, and Plaintiff and Class members and CFD mutually understood that CFD would: (1) provide financial or related services to Plaintiff and Class members; (2) use Plaintiff's and Class members' PII to facilitate providing financial services

to Plaintiff and Class members; (3) take reasonable measures to protect the security and confidentiality of Plaintiff's and Class members' PII; and (4) protect Plaintiff's and Class members PII in compliance with federal and state laws and regulations, industry standards, and CFD's representations regarding its security and privacy practices.

77. The protection of PII was a material term of the implied contracts between Plaintiff and Class members, on the one hand, and CFD, on the other hand. Indeed, as set forth *supra*, CFD recognized the importance of data security and the privacy of its customers' PII in its Privacy Policy. Plaintiff and Class members and CFD mutually understood and agreed that the financial or related services CFD would provide to Plaintiff and Class members included CFD's protection of Plaintiff's and Class members' privacy and PII. Had Plaintiff and Class members known that CFD would not adequately protect its customers' PII, they would not have paid for or obtained financial or related services from CFD.

78. Plaintiff and Class members performed their obligations under the implied contract when they provided CFD with their PII and paid for financial or related services from CFD, expecting that their PII would be protected.

79. CFD breached its obligations under its implied contracts with Plaintiff and Class members in failing to implement and maintain reasonable security measures to protect and secure their PII, and in failing to implement and maintain security protocols and procedures to protect Plaintiff's and Class members' PII in a manner that complies with applicable laws, regulations, and industry standards.

80. CFD's breach of its obligations of the implied contracts with Plaintiff and Class members directly resulted in the Data Breach and the resulting injuries to Plaintiff and Class members.

81. Plaintiff and all other Class members were damaged by CFD's breach of implied contracts because: (i) they paid—directly or through their financial advisors—for data security protection they did not receive; (ii) they now face a substantially increased and imminent risk of identity theft—risks justifying expenditures for protective and remedial services for which they are entitled to compensation; (iii) their PII was improperly disclosed to unauthorized individuals; (iv) the confidentiality of their PII has been breached; (v) they were deprived of the value of their PII, for which there is a well-established national and international market; (vi) they lost time and money incurred to mitigate and remediate the effects of the Data Breach, including the increased risks of identity theft they face and will continue to face; and (vii) they overpaid for the services that were received without adequate data security.

## COUNT V
## UNJUST ENRICHMENT

82. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

83. Plaintiff and Class members conferred a monetary benefit upon Defendant through the provision of their PII, which Defendant utilized to provide financial services. Plaintiff and Class members did so with an implicit understanding that Defendant would protect the PII it collects and stores.

84. Defendant accepted or had knowledge of the benefits conferred upon it by Plaintiff and Class members. Defendant benefitted from the receipt of Plaintiff's and Class members' PII, as this was used to facilitate their business operations and provision of services.

85. As a result of Defendant's conduct, Plaintiff and Class members suffered actual damages in an amount equal to the difference in value between the financial services including reasonable data privacy and security practices and procedures that they bargained for, and those

financial services without reasonable data privacy and security practices and procedures that they received.

86. Defendant should not be permitted to retain the money belonging to Plaintiff and Class members because Defendant failed to adequately implement the data privacy and security procedures for itself that Plaintiff and Class members paid for and that were otherwise mandated by federal, state, and local laws and industry standards.

87. Plaintiff and Class members have no adequate remedy at law.

88. Defendant should be compelled to provide for the benefit of Plaintiff and Class members all unlawful proceeds received by them as a result of the conduct and Data Breach alleged herein.

**PRAYER FOR RELIEF**

Plaintiff, individually and on behalf of all other members of the Class, respectfully requests that the Court enter judgment in his favor and against Defendant as follows:

A. Certifying the Class as requested herein, designating Plaintiff as Class Representative, and appointing Plaintiff's counsel as Class Counsel;

B. Awarding Plaintiff and the Class appropriate monetary relief, including actual damages, statutory damages, punitive damages, restitution, and disgorgement;

C. Awarding Plaintiff and the Class equitable, injunctive, and declaratory relief, as may be appropriate. Plaintiff, on behalf of himself and the Class, seeks appropriate injunctive relief designed to prevent Defendant from experiencing another data breach by adopting and implementing best data security practices to safeguard PII and to provide or extend credit monitoring services and similar services to protect against all types of identity theft;

D. Awarding Plaintiff and the Class pre-judgment and post-judgment interest to the maximum extent allowable;

E. Awarding Plaintiff and the Class reasonable attorneys' fees, costs, and expenses, as allowable; and

F. Awarding Plaintiff and the Class such other favorable relief as allowable under law.

**JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury of all claims in this Class Action Complaint so triable.

Dated: March 4, 2026

Respectfully submitted,

/s/ *William N. Riley*
William N. Riley (#14941-49)
Russell B. Cate (#27056-29)
Sundeep Singh (#36591-29)
**RILEYCATE, LLC**
11 Municipal Drive, Suite 320
Fishers, IN 46038
Tel: 317.588.2866
Fax: 317.458.1785
wriley@rileycate.com
rcate@rileycate.com
ssingh@rileycate.com

Ben Barnow*
Anthony L. Parkhill*
**BARNOW AND ASSOCIATES, P.C.**
205 West Randolph Street, Suite 1630
Chicago, IL 60606
Tel: 312.621.2000
Fax: 312.641.5504
b.barnow@barnowlaw.com
aparkhill@barnowlaw.com

*Counsel for Plaintiff*

**Pro hac vice* forthcoming